## NEELY v. TENNESSEE, GEORGIA AND ALABAMA RAILROAD COMPANY.

One alleging herself to be a widow brought suit against a railroad corporation, to recover damages for the tortious homicide of her husband; and on the trial it was shown that she entered into a ceremonial marriage with the deceased in the State of Tennessee. There was also evidence tending to show negligence and liability on the part of the defendant corporation. The defendant pleaded, and it was admitted, that a former suit had been brought against the defendant by another woman claiming to be the widow of the decedent, with whom he was living at the time of his death, and by whom he had four minor children. It was shown that this second marriage was entered into as a ceremonial marriage in the State of Alabama subsequently to the marriage to the plaintiff in the present case. The suit resulted in a compromise verdict, which was paid by the defendant. Both the present plaintiff and the decedent were subsequently married to other persons, after an alleged desertion by the decedent, and both had children by the subsequent marriages. It does not affirmatively appear that either obtained a divorce before their second marriage. On the contrary, the plaintiff testified that she never obtained a divorce. It was insisted that the plaintiff was shown not to be the widow of the decedent, because of the presumption in favor of the validity of the second marriage. There was no contention that the marriage of the plaintiff with the defendant was originally invalid, or that a prior marriage was ever entered into by either of them. The court directed a verdict for the defendant. *Held*, that there is no such presumption,

under the facts of this case, as would authorize the court to hold, as a matter of law, that the former marriage between the plaintiff and the decedent had been dissolved. The plaintiff having made out a prima facie case, it should have been submitted to the jury, under proper instructions, and the court erred in directing a verdict for the defendant.

JUNE 16, 1916.

Action for damages. Before Judge Wright. Walker superior court. June 8, 1915.

*Rosser & Shaw,* for plaintiff.

*Coleman & Frierson* and *Shattuck & Shattuck,* for defendant.

HILL, J. The plaintiff sued the defendant railroad company for the alleged homicide of her husband. At the outset of the case she carried the burden of showing that she was the widow of the decedent, and that his homicide was one for which under the law there could be a recovery. As to the first proposition, if she showed that she had been married to the decedent, and nothing else appeared, this would make a prima facie case. If she herself proved that her marriage was illegal or had been dissolved, then she would destroy the prima facie case which might otherwise exist on this point. The defendant pleaded that a former suit had been brought by another woman as the widow of the decedent, which had resulted in a compromise verdict and the payment of the amount so awarded. In substance it set up that another woman than the plaintiff was the legal wife of the decedent at the time of his death, and therefore, in effect, that the plaintiff was not the widow of the decedent, which might have been either because of some invalidity in her original marriage with him, or because that marriage had been dissolved. There was no contention that the marriage of the plaintiff with the decedent was originally invalid, and therefore the contention of the defendant amounted to asserting that while the plaintiff had been the wife of the decedent there had been a dissolution of that relation and a second valid marriage of the decedent to another woman, who was his lawful widow.

In Georgia a man can not have two lawful wives at the same time, by presumption or otherwise; and no presumption of innocence, or the like, can effect that result. As it appeared that both of these women had gone through a ceremonial marriage with the decedent, and it did not appear that there had been any third marriage anterior to one of them, one of these women must have been his lawful wife, and the other one not, unless the marriage to the

first wife was legally dissolved. In cases involving competition between two asserted marriages, or the legitimacy of offspring, a presumption of innocence is often indulged, so as to place upon one who attacks the validity of a marriage the burden of showing its invalidity. Here it was shown beyond controversy that the decedent had been married to the plaintiff in the State of Tennessee. If nothing more appeared, this would make out a prima facie case in her favor as to that point. *Clark* v. *Cassidy*, 62 *Ga.* 408 (5). She introduced evidence to the effect that her husband deserted her; that she heard no more of him until she heard of his death; that after seven or eight years absence on his part she was informed that he was presumed to be dead, and she married a second time; but that she never obtained any divorce from him. This negatived the obtaining of any divorce by her, and a statement that after he deserted her she heard nothing further in regard to him until after his death furnished evidence tending to show that she had never been furnished with evidence of any proceeding by him for divorce, or knew of any such proceeding, and therefore some evidence that no divorce was granted to him with service upon her in the State of Tennessee, where she continued to reside after he deserted her. It does not appear what were the extent of his wanderings after he left his wife, but at some time thereafter in the State of Alabama he married another woman. There is no evidence at all that he procured any divorce before this second marriage. But it is contended that the presumption of innocence of a crime would raise a presumption that he must have obtained a divorce in Alabama, or somewhere else, before the second marriage. If there were any such divorce, apparently it must have been on service by publication, or on some mode of substituted service, or without any service at all. If any such presumption would go to the extent of presuming that there had been a divorce obtained with some character of service in another State than Tennessee, presumably it would be upon substituted service. But it has been held that such a decree of divorce, if actually rendered, is not within the full faith and credit clause of the constitution of the United States, and that it has no extra-territorial effect beyond the State of its rendition, by virtue of that clause of the constitution. Haddock *v.* Haddock, 201 U. S. 562 (26 Sup. Ct. 525, 50 L. ed. 867, 5 Ann. Cas. 1). As a matter of comity this

State does not broadly recognize every divorce which may have been rendered anywhere on substituted service. In some cases and on some grounds, a decree of divorce rendered in another State upon substituted service may by comity be recognized in this State; but it is not a universal rule that all decrees of divorce rendered in a foreign State on substituted service will be recognized here as valid. *Joyner* v. *Joyner,* 131 *Ga.* 217 (62 S. E. 182, 18 L. R. A. (N. S.) 647, 127 Am. St. R. 220); *Crumbley* v. *Brook,* 135 *Ga.* 723 (70 S. E. 655). A fortiori it could not be held that the mere fact that a man having a living wife in Tennessee had married another woman in Alabama would raise an absolute presumption that he had obtained in Alabama, or at some place other than Tennessee, a divorce on substituted service and on some ground which would be recognized in Georgia as a valid divorce, and that, too, not in a controversy between two alleged wives, or the children of the two marriages with respect to legitimacy or inheritance, but when set up as a means of defense by a railroad company to destroy a prima facie case made by the plaintiff as to her status as a widow in a suit against the company for the homicide of her husband. If any presumption of innocence arose in such a case, it would not be sufficient to authorize a declaration as a matter of law, under the evidence above mentioned, that the first marriage had been dissolved. If the burden were upon the first wife to show that her wandering husband had not in any possible jurisdiction obtained a divorce by substituted service, she would carry a practically impossible burden; and a man would be almost immune from prosecution for bigamy if he would travel extensively and marry a sufficient number of women, with a presumption that each time he had obtained a divorce. It is to be noted (which fact has already been adverted to) that this is not a controversy between two women, each claiming to be the widow of the deceased, and does not put in direct competition, as to validity, two marriages; but it is a suit by a woman claiming to be the widow, for the homicide of her alleged husband, with the defense set up by the defendant, in the absence of the second wife as a party, that the second wife was the real wife and that the first wife was not the lawful widow. Thus, the case was not one involving an attack by the plaintiff upon some subsequent marriage, but one in which the defendant is attacking the status of

the plaintiff as a widow by seeking to show that her marriage had been dissolved. After the plaintiff had made out a prima facie marriage, the burden of showing its dissolution would rest on the defendant.

The rulings that a presumption of death from absence may yield to the presumption of innocence are not applicable in the present case. No presumption of anybody's death is set up in the present action in support of the validity of the second marriage and the dissolution of the first. If in this case any presumption of the death of the decedent were invoked, it would yield to proof that he was in life when the railway-train struck him; otherwise there would be no cause of action on the part of any person. Presumptions of death from absence may be rebutted, and yield to the fact of life when proved.

Upon the whole, the evidence on behalf of the plaintiff made out a prima facie case that she was married to the decedent and remained his wife until his death, although under a misapprehension, and under advice of counsel, she had married a second time before that event. As against this, the mere bald proof of a marriage in Alabama to another woman and of living with her in Georgia at the time when his death occurred, would not be sufficiently conclusive to show that the first marriage had been dissolved and that the plaintiff was not the widow of the decedent, or to authorize the judge to direct a verdict in favor of the defendant railway company on that ground. It may be remarked that presumptions of dissolution of marriage, and the like, based on presumptions of innocence, have their use, but are not arbitrary rules of law to be applied in cases where the facts show them to be inapplicable. In this connection see notes to the cases of Pittinger v. Pittinger, 89 Am. St. R. 193, 206 (28 Colo. 308, 64 Pac. 195), and Smith v. Fuller, 16 L. R. A. (N. S.) 98 (138 Iowa, 91, 115 N. W. 912).

If the plaintiff made out a prima facie case showing she was the widow of the decedent, there was sufficient evidence on the subject of negligence and liability to authorize the submission of the case to the jury. It follows that the direction of a verdict in favor of the defendant was error.

*Judgment reversed. All the Justices concur.*